UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA PARRA,

Plaintiff,

- against –

MOUNT SINAI HEALTH SYSTEM, INC., THE MOUNT SINAI HOSPITAL, JENNIFER POULIOT, and AARTI BHARDWAJ,

Defendants.

CASE No. 1:26-cv-08163

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jessica Parra ("Plaintiff" or "Ms. Parra"), by and through her attorneys, Brandon J. Broderick, LLC, brings this action against Defendants Mount Sinai Health System, Inc. and The Mount Sinai Hospital (collectively, "Mount Sinai" or the "Entity Defendants"), and Jennifer Pouliot and Aarti Bhardwaj (collectively, the "Individual Defendants," and together with the Entity Defendants, "Defendants"), to allege upon knowledge concerning her own experience, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This is an action to remedy Defendants' willful violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq*. (the "FMLA"), New York Labor Law § 215, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. (the "NYSHRL"), arising from Mount Sinai's termination of Plaintiff Jessica Parra – a decorated oncology nurse and Clinical Program Manager with more than

a decade of service – in the middle of her approved, medically certified leave of absence.

2. Ms. Parra devoted her entire professional career to Mount Sinai and its cancer program. She rose from bedside nursing to Clinical Program Manager for Cancer Quality and Safety, and just weeks before the events at issue she received an overwhelmingly positive annual performance appraisal.

3. Ms. Parra's team began working a hybrid schedule in 2020 because of the COVID-19 pandemic. In 2022, with Mount Sinai's knowledge, Ms. Parra informed her leaders that she would eventually need to relocate to southern New Jersey. In May 2024, Ms. Parra relocated to southern New Jersey, approximately three hours from Mount Sinai's Manhattan campus, and Mount Sinai offered her, and she accepted, a fully remote work arrangement. She performed that role successfully from May 2024 through December 2025.

4. In the fall of 2025, after Ms. Parra told her supervisor that she felt "unsafe in my job and in this conversation," after she discovered that Defendant Pouliot had been presenting Ms. Parra's work and ideas as her own and confirmed that discovery in an email exchange with Frances Cartwright, Mount Sinai's Vice President of Oncology Nursing Services, and after she questioned in writing the sudden retraction of a promotion she had been promised, Mount Sinai abruptly revoked her fully remote arrangement and ordered her to begin reporting onsite in Manhattan two days per week, out of Ms. Parra's typical four-day, ten-hour

workweek (8:00 a.m. to 6:00 p.m.) – a schedule Defendants knew she could not possibly maintain from three hours away.

5. Mount Sinai's November 12, 2025, directive was accompanied by an extraordinary ultimatum from her supervisor, Defendant Jennifer Pouliot: "If you are unable to accommodate the updated hybrid schedule, please provide a letter of resignation with and [sic] end date no later than December 15th, 2025."

6. Ms. Parra did not resign. Instead, as the campaign against her took its toll on her health, she exercised her federally protected rights: on December 1, 2025, she requested continuous medical leave for her own serious health condition, and her leave – supported by a timely psychologist's certification – commenced on December 2, 2025, and was approved through February 21, 2026, with a projected return-to-work date of February 24, 2026.

7. Mount Sinai's response was swift and unlawful. By letter dated December 29, 2025 – just four weeks into Ms. Parra's protected leave – Defendant Pouliot notified Ms. Parra: "At this time we are terminating your employment with Mount Sinai." Ms. Parra, who was home recovering, did not learn of her termination until January 3, 2026, when a Mount Sinai executive emailed the termination letter to her personal email address. Her health insurance was cut off without warning while she was seriously ill.

8. Only after Ms. Parra retained counsel and served a formal notice of claim did Mount Sinai scramble to unwind what it had done. A recruiter contacted Ms. Parra in February 2026 and asked her to re-apply for her own job through a

public job posting. Defendant Pouliot then sent a “TIME SENSITIVE” letter recasting Ms. Parra’s termination as a voluntary “resignation,” admitting that the December 29, 2025 separation had been effectuated “in error,” and threatening to “cancel[]” her purported reinstatement if she did not respond within five days – all while Ms. Parra remained on medical leave.

9. Defendants’ shifting and contradictory explanations – that Ms. Parra was terminated for failing to resign, that she voluntarily resigned, that she was separated on December 29, 2025, and that she was actually separated on January 2, 2026 – are pretext for unlawful interference, discrimination, and retaliation.

10. Ms. Parra brings this action to recover, among other things, her lost wages and benefits, liquidated damages, compensatory damages for her emotional distress, punitive damages, and attorneys’ fees and costs.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States, namely the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., which expressly authorizes a private right of action pursuant to 29 U.S.C. § 2617(a)(2).

12. This Court has supplemental jurisdiction over Plaintiff’s related New York State law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

14. Ms. Parra's position was based at The Mount Sinai Hospital, located at One Gustave L. Levy Place, New York, New York 10029, in this District.

15. The employment decisions at issue in this action, including the revocation of Ms. Parra's remote work arrangement and the termination of her employment, were made, implemented, or originated in this District.

16. Defendants conduct continuous and systematic business within the State of New York and this District.

17. Pursuant to New York Labor Law § 215(2)(b), notice of Plaintiff's Labor Law § 215 claim has been or will be served upon the Attorney General of the State of New York at or before the commencement of this action.

## THE PARTIES

18. Plaintiff Jessica Parra is a citizen of the State of New Jersey, residing in Absecon, New Jersey.

19. Ms. Parra is a registered nurse who holds a Master of Science degree.

20. Ms. Parra was employed by Mount Sinai from June 8, 2015 until Mount Sinai terminated her employment by letter dated December 29, 2025, which Mount Sinai later claimed had been "effectuated" on January 2, 2026.

21. At the time of her termination, Ms. Parra held the title of Clinical Program Manager, Cancer Quality and Safety, within Mount Sinai's Oncology

Administration department, with responsibility across the Mount Sinai Health System.

22. Upon information and belief, Defendant Mount Sinai Health System, Inc. is a New York not-for-profit corporation with its principal place of business in New York, New York.

23. Upon information and belief, Defendant The Mount Sinai Hospital is a New York not-for-profit corporation that owns and operates a hospital located at One Gustave L. Levy Place, New York, New York 10029.

24. Upon information and belief, at all relevant times, Mount Sinai Health System, Inc. and The Mount Sinai Hospital acted as joint and/or single employers of Ms. Parra, sharing common management, human resources administration, and centralized control of labor relations.

25. Defendant Jennifer Pouliot is, upon information and belief, the Senior Director of Oncology Quality and Safety for Mount Sinai and was Ms. Parra's direct supervisor at all relevant times.

26. Defendant Pouliot exercised control over the terms and conditions of Ms. Parra's employment, including her schedule, her work arrangement, and her continued employment, and personally signed both the November 12, 2025 schedule memorandum and the December 29, 2025 termination letter.

27. Defendant Aarti Bhardwaj is, upon information and belief, the Chief of Oncology Quality and Safety for the Mount Sinai Health System, who possessed

and exercised supervisory authority over Ms. Parra's position, including with respect to the events described in this Complaint.

28. Upon information and belief, Defendants collectively employ well in excess of fifty employees within seventy-five miles of Ms. Parra's worksite.

29. At all relevant times, the Entity Defendants were "employers" within the meaning of the FMLA, 29 U.S.C. § 2611(4), because they are engaged in commerce or in an industry or activity affecting commerce and employ fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.

30. At all relevant times, the Individual Defendants were "employers" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I), because they acted, directly or indirectly, in the interest of Mount Sinai toward Ms. Parra and exercised control over her employment.

31. At all relevant times, Ms. Parra was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2), because she had been employed by Mount Sinai for at least twelve months, had worked at least 1,250 hours during the twelve-month period preceding her leave, and was employed at or reported to a worksite at which Mount Sinai employed fifty or more employees within seventy-five miles.

32. At all relevant times, Defendants were "employers" and Ms. Parra was an "employee" within the meaning of New York Labor Law §§ 190 and 215 and the NYSHRL, N.Y. Exec. Law § 292.

## FACTUAL ALLEGATIONS

### I. Ms. Parra's Decade of Exemplary Service to Mount Sinai

33. Mount Sinai hired Ms. Parra on June 8, 2015.

34. Ms. Parra began her Mount Sinai career as a bedside registered nurse in The Mount Sinai Hospital's hematology, oncology, and bone marrow transplant unit.

35. Ms. Parra thereafter served for approximately two years as a registered nurse in The Mount Sinai Hospital's pediatric intensive care unit.

36. In or about 2018, Mount Sinai promoted Ms. Parra to Clinical Program Manager for cancer services at The Mount Sinai Hospital.

37. Ms. Parra served with distinction in that role, and in her final title of Clinical Program Manager, Cancer Quality and Safety, for approximately seven years. During that time, her position was promoted from a hospital-level role to a health system-level role, with responsibility spanning the Mount Sinai Health System.

38. Throughout her tenure, Ms. Parra received consistently positive annual performance appraisals, including for each of the years 2020 through 2025.

39. Ms. Parra's 2025 annual performance appraisal rated her as exceeding expectations across multiple core job responsibilities.

40. At her performance appraisal review meeting on October 28, 2025, Ms. Parra received an overwhelmingly positive evaluation, including a "Role Model" ranking.

41. At no time prior to her termination was Ms. Parra advised of any performance concern that could remotely justify her discharge.

## II. The Fully Remote Work Arrangement

42. In or about 2022, Ms. Parra informed her team that she intended to relocate permanently to southern New Jersey. In May 2024, Ms. Parra relocated to southern New Jersey, approximately three hours from The Mount Sinai Hospital.

43. With full knowledge that Ms. Parra's relocation was permanent, Mount Sinai offered Ms. Parra a fully remote work arrangement, which she accepted.

44. Ms. Parra performed her Clinical Program Manager role on a hybrid basis beginning in 2020, and on a fully remote basis beginning in May 2024, successfully and without incident.

45. Ms. Parra's remote arrangement was a settled term and condition of her employment upon which she reasonably relied in making her home in Absecon, New Jersey.

## III. Promised Promotion Retracted and Ms. Parra's Complaints

46. In December 2024, Defendant Bhardwaj verbally accosted Ms. Parra during a team meeting after Ms. Parra disclosed that she had unread emails upon returning from approved paid time off, even though it was later confirmed that nothing had been missed or was late.

47. During a meeting on August 6, 2025 with Defendants Bhardwaj and Pouliot, Ms. Parra communicated her desire for professional growth; Defendants acknowledged the limitations on her development within her current role due to her

remote status, informed her of a new position that was pending financial approval, and requested her input on the development of that role.

48. On September 4, 2025, Ms. Parra met with Defendant Pouliot to further discuss the prospective new role, and she shared and emailed proposed role descriptions to Pouliot for review.

49. On October 16, 2025, during a meeting in which Defendant Pouliot accused Ms. Parra of "attacking" a colleague in connection with a routine follow-up inquiry, Ms. Parra told Pouliot that she felt "unsafe in my job and in this conversation."

50. Later that same day, Defendant Pouliot sent Ms. Parra a follow-up email stating: "I again apologize if our conversation this morning made you feel 'unsafe in your job', as you stated. That was not the intention, I unfortunately became frustrated with the tone of the conversation."

51. At her October 28, 2025 performance appraisal review – the same review in which she received a "Role Model" ranking – Ms. Parra inquired about the status of the promised new role, and Defendant Pouliot told her that the role no longer existed and that there were no development opportunities for her on the team.

52. On November 11, 2025, Ms. Parra emailed Defendants Bhardwaj and Pouliot seeking clarification regarding the retraction of the promised role, writing that, given her "dedicated, decade-long career at Mount Sinai, and significant

contributions to its Cancer program, the retraction of the role and subsequent change in communication is confusing and unsettling."

## IV. The Revocation of Remote Work and the Resignation Ultimatum

53. The very next morning, on November 12, 2025 at 9:30 a.m., Defendants Bhardwaj and Pouliot summoned Ms. Parra to a meeting.

54. At that meeting, Defendants presented Ms. Parra with a memorandum, signed by Defendant Pouliot, recalling her fully remote work contract and directing that, effective the week of Monday, December 15, 2025, she report onsite to The Mount Sinai Hospital two shifts per week.

55. When Ms. Parra requested clarification regarding the retraction of the promised new role, her request was denied.

56. When Ms. Parra asked whether there were opportunities elsewhere within the company, she was told to consult the company intranet.

57. At 10:10 a.m. that morning, Defendant Pouliot emailed Ms. Parra the schedule memorandum with the following directive: "If you are unable to accommodate the updated hybrid schedule, please provide a letter of resignation with and [sic] end date no later than December 15th, 2025."

58. Defendants knew that Ms. Parra lived approximately three hours from The Mount Sinai Hospital and knew that she could not comply with the new onsite schedule.

59. Upon information and belief, Defendants revoked Ms. Parra's remote work arrangement, on approximately thirty days' notice, as a tactical and punitive measure intended to force her resignation.

60. Ms. Parra did not resign, and she never told Defendants that she was resigning.

## V. Ms. Parra Exercises Her Right to Protected Medical Leave

61. The events of October and November 2025 took a severe toll on Ms. Parra's health.

62. On December 1, 2025, at approximately 5:23 p.m., Ms. Parra reported her need for a continuous leave of absence due to her own illness, and a leave of absence claim, Claim Number 54755419, was opened through Mount Sinai's leave administration system.

63. Ms. Parra's medical leave commenced on December 2, 2025.

64. Ms. Parra timely provided medical certification from her psychologist supporting her leave.

65. Ms. Parra's leave was designated as a continuous leave for the employee's own illness, approved through February 21, 2026, with a projected return-to-work date of February 24, 2026 – within the twelve workweeks of leave to which she was entitled under the FMLA.

66. Ms. Parra's condition constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) because it involved continuing treatment by a

health care provider and rendered her unable to perform the functions of her position.

67. Defendants at all relevant times knew that Ms. Parra had requested and was taking protected medical leave.

**VI. Mt. Sinai Terminates Ms. Parra in the Middle of Her Protected Leave**

68. By letter dated December 29, 2025 – twenty-seven days into Ms. Parra's protected medical leave – Defendant Pouliot notified Ms. Parra that her employment was terminated.

69. The December 29, 2025 letter stated: "On November 12th, 2025 we provided you with a 30 days' notice requiring onsite presence beginning the week of December 15th, 2025. You stated this was not feasible for you, but we have not yet received a letter of resignation. At this time we are terminating your employment with Mount Sinai."

70. The letter demanded that Ms. Parra return her identification badge, cell phone, and laptop by January 15, and enclosed a termination law notice regarding her benefits.

71. Upon information and belief, Mount Sinai sent the termination letter to Ms. Parra's home address by registered mail on or about December 31, 2025.

72. Ms. Parra first learned that she had been terminated on January 3, 2026, when Frances Cartwright, Mount Sinai's Vice President of Oncology Nursing Services, emailed the termination letter to Ms. Parra's personal email address.

73. Mount Sinai terminated Ms. Parra's health insurance coverage in connection with her separation, without prior notice to her, while she was seriously ill and on protected medical leave, and issued her a COBRA notice reflecting a December 2025 termination date.

74. At the time of her termination, Ms. Parra was on approved, medically certified leave and had not exhausted her FMLA entitlement, and her leave records reflected FMLA approval through February 21, 2026, with a projected return-to-work date of February 24, 2026.

75. Mount Sinai did not contact Ms. Parra's physician, did not question her certification, and identified no legitimate business reason for terminating a ten-year employee with a "Role Model" rating in the middle of her medical leave.

## VII. The Post-Termination Scramble and the Sham "Reinstatement"

76. On January 14, 2026, Ms. Parra, through counsel, served a notice of her legal claims on Mount Sinai's Chief Executive Officer, expressly identifying claims for FMLA interference and unlawful retaliation for her use of a legally protected absence.

77. On February 12, 2026, a Mount Sinai talent acquisition recruiter, Jonathan Roldan, called, texted, and emailed Ms. Parra, stating that he had "received communication that they would like to reinstate you to the CPM position at MSH," and directing her to "please apply to the position" through a link to a public job posting on Mount Sinai's careers website.

78. Mount Sinai thus asked Ms. Parra to re-apply, as an outside applicant, for the very position from which it had unlawfully terminated her.

79. On February 13, 2026, Defendant Pouliot sent Ms. Parra a letter marked "TIME SENSITIVE," asserting for the first time that Ms. Parra had "categorically stated that remote work was a 'dealbreaker'" and that Mount Sinai had understood her to be "choosing to resign."

80. Ms. Parra never stated that she was resigning, never submitted a letter of resignation, and never used the word "dealbreaker" to describe her remote work arrangement.

81. The February 13, 2026 letter further asserted that Ms. Parra's "separation was accordingly effectuated on January 2, 2026," that "[t]he department initially effectuated separation on December 29, 2025 in error," and that her COBRA letter "may have reflected this incorrect date."

82. The February 13, 2026 letter demanded that Ms. Parra contact a Mount Sinai representative within five days, by February 18, 2026, and warned: "Failure to do so will result in cancelling your reinstatement."

83. Defendants imposed this ultimatum while Ms. Parra remained on medical leave under the care of her physicians, with FMLA approval through February 21, 2026 and a projected return-to-work date of February 24, 2026.

84. Defendants' shifting and contradictory accounts – terminating Ms. Parra for failing to resign, then recasting her termination as a voluntary

resignation, and asserting two different separation dates – are evidence of pretext and of the willfulness of Defendants' conduct.

**VIII. Ms. Parra's Damages**

85. As a direct and proximate result of Defendants' unlawful conduct, Ms. Parra has suffered and continues to suffer economic damages, including lost wages, salary, health insurance, retirement contributions, and other employment benefits.

86. Ms. Parra was stripped of her health insurance, without notice, while she was seriously ill, causing her economic harm and profound distress.

87. As a direct and proximate result of Defendants' unlawful conduct, Ms. Parra has suffered and continues to suffer emotional distress, mental anguish, humiliation, damage to her professional reputation, loss of career opportunities, and loss of the ordinary pleasures of everyday life.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**(FMLA Interference – Violation of 29 U.S.C. § 2615(a)(1))**
**(Against All Defendants)**

88. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89. The FMLA, 29 U.S.C. § 2612(a)(1)(D), entitles an eligible employee to "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

90. The FMLA, 29 U.S.C. § 2614(a)(1), further entitles an eligible employee who takes such leave, on return from leave, "(A) to be restored by the

employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

91. The FMLA, 29 U.S.C. § 2614(c)(1), further requires an employer to maintain the employee's coverage under any group health plan for the duration of the leave at the level and under the conditions coverage would have been provided if the employee had continued in employment.

92. The FMLA, 29 U.S.C. § 2615(a)(1), provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

93. Under Department of Labor regulations, interference with the exercise of an employee's FMLA rights includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

94. To prevail on a claim of interference with her FMLA rights, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016).

95. At all relevant times, Ms. Parra was an eligible employee under the FMLA, and Defendants were employers as defined by the FMLA.

96. Ms. Parra was entitled to take leave under the FMLA because she suffered from a serious health condition that made her unable to perform the functions of her position.

97. Ms. Parra gave notice to Defendants of her need for leave on December 1, 2025, and timely provided a supporting medical certification from her physician.

98. Defendants interfered with, restrained, and denied Ms. Parra's exercise of her FMLA rights by, among other things: terminating her employment in the middle of her approved leave; denying her the remainder of the twelve workweeks of leave to which she was entitled; denying her the right to be restored to her position or an equivalent position at the conclusion of her leave; terminating her group health insurance coverage during her leave without notice; and conditioning her purported "reinstatement" on her response to an arbitrary five-day deadline, and on her re-application for her own position, while she remained on protected leave.

99. Defendants' violations of the FMLA were willful, in bad faith, and undertaken with reckless disregard for Ms. Parra's rights.

100. As a direct and proximate result of Defendants' unlawful conduct, Ms. Parra has sustained damages, including lost compensation and benefits and other actual monetary losses, and is entitled to recover those damages, interest, liquidated damages, equitable relief, and attorneys' fees and costs pursuant to 29 U.S.C. § 2617.

**SECOND CAUSE OF ACTION**
**(FMLA Retaliation – Violation of 29 U.S.C. § 2615(a)(2))**
**(Against All Defendants)**

101. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

102. The FMLA, 29 U.S.C. § 2615(a)(2), provides: “It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.”

103. Under Department of Labor regulations, “[t]he Act’s prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights,” and “employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.” 29 C.F.R. § 825.220(c).

104. To establish a prima facie case of FMLA retaliation, a plaintiff must establish that “1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for h[er] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.” Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016) (quotation omitted).

105. Ms. Parra exercised rights protected under the FMLA by requesting and taking a medically certified leave of absence for her own serious health condition beginning December 2, 2025.

106. Ms. Parra was qualified for her position, as reflected by her decade of service and her "Role Model" performance rating issued weeks before her leave began.

107. Ms. Parra suffered adverse employment actions, including the termination of her employment and the termination of her health insurance coverage.

108. The circumstances of Ms. Parra's termination give rise to a compelling inference of retaliatory intent: Defendants terminated her twenty-seven days after her protected leave began and while she remained on leave; Defendants had demanded her resignation just weeks before she began her leave; and Defendants have offered shifting and contradictory explanations for her separation, including recasting her termination as a "resignation" she never tendered.

109. Defendants' retaliation was willful, in bad faith, and undertaken with reckless disregard for Ms. Parra's rights.

110. As a direct and proximate result of Defendants' unlawful conduct, Ms. Parra has sustained damages, including lost compensation and benefits and other actual monetary losses, and is entitled to recover those damages, interest, liquidated damages, equitable relief, and attorneys' fees and costs pursuant to 29 U.S.C. § 2617.

**THIRD CAUSE OF ACTION**
**(Retaliation for Use of a Legally Protected Absence – Violation of New York Labor Law § 215(1)(a)(viii))**
**(Against All Defendants)**

111. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

112. New York Labor Law § 215(1)(a) provides that no employer, agent, "or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (viii) because such employee has used any legally protected absence pursuant to federal, local, or state law."

113. Ms. Parra's medical leave of absence, which commenced on December 2, 2025, was a legally protected absence pursuant to federal law, namely the FMLA.

114. Defendants discharged, penalized, discriminated, and retaliated against Ms. Parra because she used a legally protected absence, including by terminating her employment while she was on that absence, terminating her health insurance, and conditioning her purported reinstatement on an arbitrary five-day deadline and a re-application requirement imposed while she remained on leave.

115. The Individual Defendants are liable under Labor Law § 215 because they are agents of the Entity Defendants and persons who directly participated in the retaliatory conduct.

116. Defendants' violations of Labor Law § 215 were willful.

117. As a direct and proximate result of Defendants' unlawful conduct, Ms. Parra has sustained damages and is entitled to all remedies available under Labor

Law § 215(2)(a), including lost compensation, front pay or reinstatement with restoration of seniority, liquidated damages, costs, and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Disability Discrimination and Failure to Accommodate – Violation of NYSHRL, N.Y. Exec. Law § 296)**
**(Against the Entity Defendants)**

118. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

119. At all relevant times, Ms. Parra suffered from a disability within the meaning of N.Y. Exec. Law § 292(21), namely a medical impairment demonstrable by medically accepted clinical and diagnostic techniques, and/or Defendants perceived her as disabled.

120. Defendants knew of Ms. Parra's disability no later than December 1, 2025, when she requested medical leave, and by virtue of the physician's certification she provided.

121. A finite leave of absence with a projected return-to-work date, such as the leave Ms. Parra requested and took, is a reasonable accommodation under the NYSHRL.

122. The Entity Defendants violated N.Y. Exec. Law § 296(1)(a) by discharging Ms. Parra and discriminating against her in the terms, conditions, and privileges of her employment because of her disability.

123. The Entity Defendants further violated N.Y. Exec. Law § 296(3) by refusing to provide Ms. Parra with a reasonable accommodation – her finite, medically certified leave of absence – and by terminating her employment rather

than continuing that accommodation, without engaging in a good faith interactive process.

124. The Entity Defendants' conduct was willful, wanton, and undertaken with reckless indifference to Ms. Parra's rights, entitling her to punitive damages.

125. As a direct and proximate result of the Entity Defendants' unlawful conduct, Ms. Parra has sustained damages, including lost compensation and benefits, emotional distress, mental anguish, humiliation, and loss of career opportunities.

**FIFTH CAUSE OF ACTION**
**(Aiding and Abetting – Violation of NYSHRL, N.Y. Exec. Law § 296(6))**
**(Against the Individual Defendants)**

126. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

127. N.Y. Exec. Law § 296(6) makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

128. Defendant Pouliot directly participated in the unlawful conduct described herein, including by issuing the November 12, 2025 resignation ultimatum, signing the December 29, 2025 termination letter issued in the middle of Ms. Parra's protected medical leave, and issuing the February 13, 2026 "TIME SENSITIVE" ultimatum.

129. Defendant Bhardwaj directly participated in the unlawful conduct described herein, including by convening and leading the November 12, 2025

meeting at which Ms. Parra's remote work arrangement was revoked and her resignation was demanded.

130. By their actions, the Individual Defendants knowingly and/or recklessly aided and abetted the discriminatory and retaliatory conduct of the Entity Defendants, in violation of N.Y. Exec. Law § 296(6).

131. The Individual Defendants acted with malice or reckless indifference to Ms. Parra's rights, entitling her to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jessica Parra respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, in an amount not less than one million dollars ($1,000,000.00), along with the following relief:

A. Declare that Defendants' acts and practices violate the FMLA, New York Labor Law § 215, and the NYSHRL;

B. Award Plaintiff back pay, including lost wages, salary, and the value of all lost benefits, including health insurance and retirement contributions;

C. Order Defendants to reinstate Plaintiff to her former position with restoration of seniority, or award Plaintiff front pay in lieu of reinstatement;

D. Award Plaintiff liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii) and New York Labor Law § 215(2)(a);

E. Award Plaintiff compensatory damages for her emotional distress, mental anguish, humiliation, and loss of enjoyment of life;

F. Award Plaintiff punitive damages for Defendants' willful and malicious misconduct;

G. Award Plaintiff pre-judgment and post-judgment interest;

H. Award Plaintiff her reasonable attorneys' fees, expert fees, and the costs of this action; and

I. Grant such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 18, 2026

Respectfully submitted,
BRANDON J. BRODERICK, LLC
Attorneys for Plaintiff

/s/ Mark Dumas

Mark Dumas
Brandon J. Broderick, LLC
40 W 37th St #402
New York, NY 10018
(646) 481-1170
mdumas@brandonjbroderick.com